\*\*Original filed 7/27/06\*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE EUGENE KIBLER, | No. C 05-0347 JF (PR) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| RICHARD KIRKLAND, Warden, | |
| Respondent. / | |

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for felony murder (Cal. Pen. Code §§ 187, 190.2(a)(17)) and personally discharging a firearm during the commission of the offense (Cal. Pen. Code § 12022.53(c), (d)). With enhancements for his prior convictions, Petitioner was sentenced to prison for life without the possibility of parole, a consecutive twenty-five years-to-life term, and a consecutive four-year term. The California Court of Appeal affirmed the judgment, and the California Supreme Court denied a petition for review. As grounds for federal habeas relief, Petitioner asserts that (1) the trial court erred in admitting Petitioner's statement to the police in violation of his right to counsel and <u>Miranda v. Arizona</u>, 384 U.S. 436 (1996), and (2) the trial court erred in admitting expert testimony on robbery modus operandi evidence. This Court ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer and accompanying memorandum of

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Kibler347den

points and authorities addressing the merits of the petition, and Petitioner filed a traverse. After reviewing the papers, this Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

## BACKGROUND[1]

Petitioner and his girlfriend, Mieko Leggett, were charged with the murder of a Shell gas station attendant, Garinder Singh, while engaged in the commission of a robbery. Petitioner also was charged with discharging a firearm during the commission of the offense. Both Petitioner and Leggett pled not guilty.

At a pre-trial hearing on February 11, 2002, the prosecutor sought to introduce a tape recording of Petitioner's conversation with the police, in which Petitioner denied committing the crime and claimed that he had no idea what the police were talking about. The prosecutor pointed out that prior to being advised of his Miranda rights, Petitioner made reference to an attorney, was immediately advised of his rights, and then agreed to talk. The prosecutor did not believe Petitioner's initial reference to an attorney was an invocation of his right to counsel. Defense counsel asked that the trial court review that portion of the transcript to determine whether Petitioner's reference to an attorney was an invocation of his right to counsel and if his subsequent statements should be suppressed.

Immediately following Petitioner's arrest on July 25, 2000, the following conversation ensued between Petitioner and Sergeant Ponte and Lieutenant Trejo from the San Jose Police Department:

> Trejo: I'm sorry it took us a little while to get to talk to you. But, you know, we had to do a few things first. We want to talk about a caper we are working.
> Kibler: Uh-hum (affirmative).
> Trejo: But before we do that, I mean you've been around, you know how it works.
> Kibler: Well I knew something was [inaudible] when they snatched up all my clothes and everything. Like I say I don't really know what's going on with that [inaudible].
> Trejo: I understand, but what I have to do, you know what the procedure is. We have to read you the . . .
> Kibler: Oh yeah, the Miranda rights and all that.

---

[1] The relevant factual background is taken from the unpublished opinion of the California Court of Appeal, Sixth Appellate District, People v. Clarence Eugene Kibler, No. H024455 (December 4, 2003); Resp't Ex. A at 3-13.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Kibler347den                2

> Trejo: So before we can continue we want to hear what you have to say, but first let me do this. Alright. Then maybe we can talk and see what . . .
> Kibler: If I'm going to jail on anything, I want to have my attorney present before I start speaking about whatever it is you guys are talking about. I don't mean to sound like an asshole or anything. I'm not trying to be an asshole. I really would like my attorney if I'm going to be questioned because I don't really know what's going on. I don't even have a clue.
> Ponte: Well that's what we are trying to figure out. That's what we are trying to figure out. That's why we wanted to ask you a couple of questions.
> Kibler: I have no problem with you guys questioning me. I swear to God I don't. I just, if I'm going to jail, I just want my attorney around before I answer any questions.
> Ponte: Well,
> Kibler: Because nobody told me nothing.
> Ponte: Well, that's what we are trying to do. If we could talk to you and tell you.
> Trejo: Clarence, we can't continue on. You know. What I'd like to do is read the card to you. Then you can make a decision.
> Kibler: I know that's standard procedure.
> Ponte: Yeah! We haven't asked you anything yet.
> Kibler: Alright, But, okay.
> Trejo: Alright?
> Kibler: Alright.
> Trejo: You've been around.
> Kibler: Yeah. Alright.
> Trejo: And then you can reach a decision at that point. Alright.
> Kibler: Alright.
> Trejo: You have the right to remain silent. Do you understand?
> Kibler: Yeah.
> Trejo: Anything you say may be used against you in court. Do you understand?
> Kibler: Yeah.
> Trejo: You have the right to the presence of an attorney before and during any questioning. Do you understand?
> Kibler: Yes.
> Trejo: If you cannot afford an attorney, one will be appointed for you free of charge, before any questioning if you want. Do you understand that?
> Kibler: Yes.
> Trejo: Okay. Now do you want to go ahead and talk to me?
> Kibler: Yeah I'll talk to you.
> Trejo: Alright.
> Kibler: Because I want to know what's going on.

Petitioner did not testify at trial. Leggett testified that both she and Petitioner sold drugs, but that only she actually used drugs – a habit she hid from Petitioner and supported by prostitution. Leggett testified as follows: On July 24, 2000, at about 11:30 p.m., Leggett drove her mother's Ford Tempo to the Shell gas station at White and Aborn to buy a lighter on sale and smoke crack in the

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Kibler347den            3

bathroom. She walked up to the cashier's window, bought the lighter, and asked for the key to the bathroom. Singh indicated that the key was in the pass-through drawer. Singh began to flirt with Leggett. Leggett agreed that she would orally copulate Singh for money. Singh asked her to come back between 1:00 and 2:00 a.m. when business was slow. Leggett took the bathroom key and went into the bathroom to smoke crack and a cigarette. Then she drove home. As she was leaving home to meet Singh, Leggett told Petitioner that she was going out to sell crack to a customer. Petitioner wanted to go with her. They argued over whether she was really going to make a drug deal or meet somebody. Leggett agreed to allow Petitioner to accompany her, as long as he waited out of sight while she made the deal.

      Leggett drove her mother's Ford Tempo to the Kentucky Fried Chicken next door to the Shell station. Petitioner got out of the car. Leggett told him to wait and that she would return in five minutes. Leggett drove to the Shell station and parked the car next to the pump in front of the cashier window. She walked to the window and saw Singh helping another customer who purchased cigarettes and left. Singh came out to meet her. Leggett was surprised when Singh came out. She expected to have sex in the back office. Singh led Leggett to the bathroom. He unlocked the door with a key from his key ring. Leggett followed him into the bathroom. They negotiated for two to four minutes for Leggett to take off her blouse so Singh could touch her. Leggett took off her top and Singh touched her for about thirty seconds. The bathroom door opened quickly and Petitioner entered the bathroom. Leggett grabbed her top off the sink and knocked over her bag. In the bag were her cigarettes, drug paraphernalia, receipts, and mace that she carried to protect herself.

      Petitioner struck Singh in the face several times as they moved around the bathroom. Singh fell forward on the faucet. Repeatedly, Leggett called out for Petitioner to stop. She tried to stay out of the way, picked up her mace from the floor, and sprayed it in Petitioner's direction to try to stop the attack. Petitioner left the bathroom, then returned and angrily demanded to know what was going on. He kicked Singh to the floor. Leggett moved away, fearful for her own safety. She was afraid to leave the bathroom because Petitioner had threatened that if she ever left him, he would kill her. Petitioner jerked Singh around and tied him up. Petitioner then pulled out a gun and shot Singh.

Leggett left the bathroom and waited in the car. She then walked to the cashier's window where she saw Petitioner trying to open the cash register. Leggett waived and yelled for Petitioner to leave the cashier's booth. They got into the car and Leggett drove away. She did not see Petitioner in possession of any stolen items. Petitioner and Leggett stopped at a Chevron gas station where Petitioner pumped gas, but did not go to the attendant to pay. He used a credit card. Petitioner got back into the car and Leggett saw that he had a wallet that did not belong to him. Leggett asked what he was doing with the wallet. Petitioner told her that he had taken it from Singh. Leggett asked if Singh was dead, but Petitioner said he did not know. Later that morning, they stayed at a Motel 6.

In rebuttal, Sergeant Ponte, an expert in the modus operandi of robberies, testified that there are many methods used to rob a gas station attendant. One of the more typical ways is for a female to lure the attendant out of the cash register area with an offer of sex or a request for help with a car. Once the attendant comes out, the female's partner overpowers and robs the attendant.

## DISCUSSION

**A.     Standard of Review**

This Court will entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), governing the scope of federal habeas corpus proceedings filed after April 24, 1996, prevents a federal court from granting habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d)(2).

A state court's decision is "contrary to" law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or reaches a different conclusion based on facts materially indistinguishable from those of a Supreme Court case. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A federal habeas court making the "unreasonable application" inquiry

should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 123 S. Ct. 1166, 1175 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). This Court must presume any determination of a factual issue made by the state court to be reasonable and correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.      Analysis of Petitioner's Legal Claims**

       1.      <u>The Trial Court's Failure to Suppress Petitioner's Statements to the Police</u>

Petitioner alleges that the trial court committed reversible error by admitting his statements made to the police after he invoked his right to counsel. He claims that although he did not admit any involvement with either the robbery or Singh's murder, his comments were used to undercut his credibility and dispute his manslaughter defense.

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that a suspect subjected to custodial interrogation must first be advised that he has the right to remain silent, that statements made can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed. These warnings must precede any custodial interrogation, which occurs whenever law enforcement officers question a person after taking that person into custody or otherwise significantly depriving a person of freedom of action. See Miranda, 384 U.S. at 444. "Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent . . . [including] words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). If the suspect indicates a request for counsel, "the interrogation must cease

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Kibler347den                6

until an attorney is present." Edwards v. Arizona, 451 U.S. 477 (1981). However, the rule that interrogation must cease because the suspect requested counsel does not apply if the request is equivocal or ambiguous. Davis v. United States, 512 U.S. 452, 459 (1994). A statement concerning an attorney made before interrogation begins is far less likely to be a request for attorney assistance during interrogation than a similar statement made during custodial interrogation. See United States v. Doe, 170 F.3d 1162, 1166 (9th Cir.1999). Habeas relief is appropriate where (1) the statement was admitted in violation of Miranda and (2) that admission "'had a substantial and injurious effect or influence in determining the jury's verdict.'" Pope v. Zenon, 69 F.3d 1018, 1020 (9th Cir. 1995) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

Initially, the state appellate court reviewed whether Petitioner's initial statement regarding counsel was an invocation of his right to counsel pursuant to Miranda. The appellate court analyzed this question in light of the standard set forth by the United States Supreme Court in Rhode Island v. Innis, 446 U.S. at 301, considering whether the suspect is subjected to words or actions on the part of the police which are "reasonably likely to elicit an incriminating response:"

> [T]he special procedural safeguards outlined in Miranda are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subject to interrogation. 'Interrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself.
>
> Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeably results of their words of [sic] actions, the definition of interrogation can extend only to words or actions on the part of the police officers that they *should have known* were reasonably likely to elicit an incriminating response.

Resp't Ex. A at 15-16, quoting Rhode Island v. Innis, 446 U.S. at 300-02 (fns. omitted). The

1 appellate court noted that Petitioner "had made his initial request for an attorney before interrogation
2 had begun and before <u>Miranda</u> advisements were given. Up until then, there was no express
3 questioning of [Petitioner] about the case. The procedural statements that Officer Trejo made
4 invited no response from [Petitioner] concerning the case. They were 'those normally attendant to
5 arrest and custody.'" Resp't Ex. A at 16. The appellate court concluded that before <u>Miranda</u>
6 advisements were issued, "[n]othing that the officers said or did was reasonably likely to elicit an
7 incriminating response from [Petitioner]." <u>Id</u>.

8 Next, the state appellate court determined whether Petitioner knowingly and intelligently
9 waived his right to counsel after being advised of his <u>Miranda</u> rights. The appellate court relied on
10 the California Supreme Court's ruling in <u>People v. Bradford</u>, 14 Cal.4th 1005, 1036 (1997) noting,
11 "[o]nce it is deter
12 mined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he
13 could stand mute and request a lawyer, and that he was aware of the State's intention to use his
14 statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of
15 law." Resp't Ex. A at 16. In the instant case, the state appellate court found no <u>Miranda</u> violation,
16 stating:

> There is evidence that at the time when [the police] were questioning [Petitioner], he was fully aware of the [sic] both the nature of the right being abandoned and the consequences of his decision to abandon it. [Petitioner] indicated that he knew about <u>Miranda</u> advisements. In addition . . . he attempted to invoke his right to counsel before he was even given the advisements. It is inconceivable that the reading of [Petitioner's] <u>Miranda</u> rights could have caused him to forget the rights of which he had just been advised and had just tried to assert.
> [Petitioner] contends that [the police] coerced him into speaking without an attorney present. On the record before us, we find no indication of coercion. [Petitioner] was the one that continued the conversation while [the police] tried to give <u>Miranda</u> advisements. In fact, [Petitioner] interrupted [the police] after [the police] stated that before they could continue, he had to read the <u>Miranda</u> advisements. Accordingly, we find that there was no <u>Miranda</u> violation in this case. Thus, the trial court did not err in admitting [Petitioner's] statements to [the police].

Resp't Ex. A at 16-17 (fn. omitted). Once the <u>Miranda</u> rights were given, Petitioner "stated that he
would talk to the officers because he 'want[ed] to know what [was] going on.' Thereafter, he did
not invoke his right to counsel." <u>Id</u>. Accordingly, Petitioner fails to establish that his statements

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Kibler347den         8

1 made to the police were admitted in violation of <u>Miranda</u>.

2     Moreover, Petitioner has not demonstrated that the trial court's admission of Petitioner's
3 statements "had a substantial and injurious effect or influence in determining the jury's verdict."
4 <u>Brecht</u>, 507 U.S. at 654.  The appellate court noted that throughout his interview with the police,
5 Petitioner "did not admit any involvement with either a robbery or Mr. Singh's murder.
6 Furthermore he denied that he was the man on the video." Resp't Ex. A at 13.  Petitioner fails to
7 establish how the admission of his statements resulted in any prejudice.  Throughout the entire
8 questioning by police, Petitioner never made any admission or confession, and in fact steadfastly
9 maintained his innocence with respect to the robbery-murder.  Because Petitioner did not testify at
10 trial, there was no testimony or credibility issue for the jury to evaluate.  The entire manslaughter
11 defense was presented through Petitioner's co-defendant, Leggett, leaving her to suffer any
12 challenge to her credibility based on her statements to police.

13     Additionally, the evidence at trial of the events leading to Singh's death is entirely
14 inconsistent with Petitioner's heat of passion manslaughter defense, as demonstrated by the fact that
15 Petitioner wore a single glove on his shooting hand, bound the victim with electrical wire, and
16 gagged him with toilet paper.  Resp't Exs. E1 (Reporter's Transcript "RT") at 113-118, 127, 131,
17 134, 150-51, 155; E2 at 287.  Accordingly, this Court concludes that the state appellate court's
18 determination was not contrary to or an unreasonable application of clearly established Supreme
19 Court precedent, nor was it an unreasonable determination of the facts in light of the evidence
20 presented.  28 U.S.C. § 2254 (d)(1), (2).

21     2.    <u>The Trial Court's Admission of Robbery Modus Operandi Evidence in Rebuttal</u>

22     Next, Petitioner contends that the trial court erred in admitting Sergeant Ponte's rebuttal
23 testimony discussing the modus operandi of gas station robberies.  Sergeant Ponte testified that one
24 of the more typical ways of robbing a service station attendant is for a female to lure the attendant
25 out of the cash register area with an offer of sex or a request for help with her car; once the attendant
26 comes out, her partner overpowers and robs him.  Petitioner alleges that this evidence was severely
27 prejudicial, rendering his trial fundamentally unfair and denying his federal due process rights,
28 because the subject matter of the testimony was not beyond the common experience of the ordinary

1  juror.

2  Respondent contends that this claim was not fairly presented to the state supreme court and
3  thus remains unexhausted.  Respondent maintains that Petitioner's failure to raise the federal
4  constitutional violation related to this claim specifically, deprived the highest state court available of
5  the opportunity to address the merits of the claim that Petitioner seeks to raise in federal court.  See
6  28 U.S.C. § 2254(b), (c); Rose v. Lundy, 455 U.S. 509, 515-16 (1982).  However, as Respondent
7  notes, this Court still may deny a claim on the merits even if it is unexhausted.  See 28 U.S.C. §
8  2254(b)(2).  Moreover, it appears that exhaustion would be futile at this stage of the proceedings.
9  Accordingly, this Court will review the merits as set forth below.

10  A state court's evidentiary ruling is not subject to federal habeas review unless the ruling
11  violates federal law, either by infringing upon a specific federal constitutional or statutory provision,
12  or by depriving the defendant of the fundamentally fair trial guaranteed by due process.  Pulley v.
13  Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991);
14  Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985), cert. denied, 478 U.S. 1021 (1986).  In
15  order to obtain habeas relief on the basis of an evidentiary error, Petitioner must show that the error
16  was one of constitutional dimension and that it was not harmless under Brecht v. Abrahamson, 507
17  U.S. 619 (1993).  He would have to show that the error had "'a substantial and injurious effect' on
18  the verdict."  Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting Brecht, 507 U.S. at
19  623).

20  The state appellate court noted that under California law, "[e]xpert opinion testimony is
21  admissible if it is related to a subject that is sufficiently beyond common experience that the opinion
22  of an expert would assist the trier of fact; and the opinion is based on matter including the witness's
23  special knowledge, skill, experience, training, and education."  Resp't Ex. A at 18 (citing to Cal.
24  Evid. Code § 801).  The appellate court reviewed whether this testimony "is one of such common
25  knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or
26  whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of
27  an expert would assist the trier of fact."  Resp't Ex. A at 18-19 (citing to People v. Cole, 47 Cal.2d
28  99, 103 (1956)).  The state appellate court noted the trial court's conclusion that, "I'm not sure that it

United States District Court
For the Northern District of California

isn't beyond the common experience of some of the jurors." Resp't Ex. A. at 19.

The appellate court then concluded that:

> [W]e do think that the subject matter of Sergeant Ponte's expert testimony was "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." [citation omitted] . . . Sergeant Ponte's testimony suggested that this activity had meaning and importance that ways beyond the common experience of the jurors. It assisted them in assessing the significance of [Petitioner's] and Leggett's acts. That is, that they were working as a team to rob Mr. Singh. Significantly, Sergeant Ponte did not offer his opinion on the ultimate issue of [Petitioner's] and Leggett's guilt. He testified that there are numerous ways to rob a gas station, one of which involves a female luring the attendant out of a locked cashier booth so that her partner can overpower and rob him. This gave the jury an alternate theory to explain [Petitioner's] and Leggett's behavior. There was no error in admitting the testimony.

Resp't Ex. A. at 19-20.

Petitioner has not demonstrated that the admission of the robbery modus operandi evidence was an "error . . . of constitutional dimension," or a violation of any federal or statutory law depriving him of a fundamentally fair trial. Dillard, 244 F.3d at 767. Petitioner similarly fails to establish that the error had a "' substantial and injurious effect' on the verdict." Id. Thus, the Court concludes that the state appellate court's decision was not contrary to, or an unreasonable application of, United States Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2).

## CONCLUSION

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings. Accordingly, the petition for writ of habeas corpus is denied. The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: __7/27/06_____

/s/ _____
JEREMY FOGEL
United States District Judge

1  A copy of this order was mailed to the following:

2

3  Clarence Eugene Kibler
   E-97032
4  Pelican Bay State Prison
   P.O. Box 7500
5  Crescent City, CA  95531

6

7  Margo J. Yu
   CA State Attorney General's Office
8  455 Golden Gate Ave
   Suite 11000
9  San Francisco, CA  94102-7004

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court** / For the Northern District of California